Andrew P. Bridges (SBN: 122761)
David S. Bloch (SBN: 184530)
Nicole M. Norris (SBN: 222785)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
Email:   abridges@winston.com
         dbloch@winston.com
         nnorris@winston.com

Attorneys for Plaintiff
DIOPTICS MEDICAL PRODUCTS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE BRANCH

| | |
|---|---|
| DIOPTICS MEDICAL PRODUCTS, INC., and LIVE EYEWEAR, INC.,<br><br>  Plaintiffs,<br><br>  vs.<br><br>IDEAVILLAGE PRODUCTS CORP., dba HD WRAPAROUNDS,<br><br>  Defendant.<br><br>AND RELATED CROSS-ACTION. | **Case No. CV 08-03538 (PVT)**<br><br>**PLAINTIFF DIOPTICS MEDICAL PRODUCTS, INC.'S OPENING CLAIM CONSTRUCTION BRIEF PURSUANT TO SCHEDULING ORDER**<br><br>Date:   September 22, 2009<br>Time:   10:00 a.m.<br>Place:  Courtroom 5<br>Judge:  The Hon. Patricia V. Trumbull |

## I.     INTRODUCTION

Pursuant to the Court's July 17, 2009, Order, co-plaintiff Dioptics Medical Products, Inc., submits this brief in support of its construction of certain disputed terms in the claims of United States Patent No. D434,789 (the " '789 patent").

## II.    BACKGROUND

Dioptics, headquartered in San Luis Obispo, created the market for "fit over" sunglasses—that is, sunglasses intended to be worn over prescription eyeglasses—in 1979, and remains the market leader.  It owns a substantial design patent portfolio covering virtually all major frame styles. The '789 patented design includes ornamental side panel lenses that allow the wearer unobstructed peripheral vision, albeit without the glare from the sun.



FIG. 1

On May 26, 2009, Dioptics served its Preliminary Claim Construction Statement in accordance with the Patent Local Rule 4-2.  Declaration of Nicole M. Norris in Support of Diotpics's Opening Claim Construction Brief ("Norris Decl."), ¶ 2, Ex. A.  As part of that submission, Dioptics provided a photo chart depicting the claims in the '789 patent which specifically identified the limitations of the claim.  Id.  IdeaVillage did not submit a corresponding proposed claim construction statement.  Id., ¶ 3.  In accordance with the principles of design patent claim construction, the Court should adopt Dioptics's depiction of the '789 patent.

## III.   LEGAL STANDARDS RELATING TO DESIGN PATENTS

A design patent protects "any new, original, and ornamental design for an article of manufacture."  35 U.S.C. § 171.  Thus, each patent in suit contains a single claim described through drawings, not words.  37 C.F.R. § 1.152 ("The design must be represented by a drawing that

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

1    complies with the requirements of § 1.84 and must contain a sufficient number of views to constitute

2    a complete disclosure of the appearance of the design"); 37 C.F.R. § 1.154 (b)(6) ("A single claim").

3    A design patent's claim covers the non-functional and original elements of a functional product.

4    *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1576 (Fed. Cir. 1995).  But the law nevertheless

5    requires proper claim construction to determine a design patent's meaning and scope.  *Id*.

### A.    Claim Construction Analysis

Claim construction is a matter of law for the Court's determination.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996).  To determine whether an accused product infringes, the first step in the analysis is construing the meaning of the claims.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd* 517 U.S. 370 (1996).  The claims of a design patent are expressed in drawings rather than described in words.  *Arminak & Assocs., Inc. v. Saint-Gobain Camar, Inc.*, 501 F.3d 1314, 1319 (Fed. Cir. 2007).  And "claim construction is adapted accordingly."  *Id.*; *see also Elmer*, 67 F.3d at 1577.  "To construe the claims of a design patent, courts are not required to attempt to provide a detailed verbal description of the claimed design as is typically done in the case of utility patents."  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (*en banc*).  Indeed, "a design is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'"  *Id., citing Dobson v. Dornan*, 118 U.S. 10, 14 (1886).  "The court should recognize the risks entailed in such a [written] description, such as the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole."  *Egyptian Goddess*, 543 F.3d at 679.  The preferred course is for the district court "not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design."  *Id*.

*Egyptian Goddess* and its progeny make clear that a detailed verbal description of the '789 patent is unnecessary and that it is appropriate to "rely upon the illustrations set out in the [the patent], as they better represent the claimed design."  *Arc'teryx Equip., Inc. v. Westcomb Outerwear, Inc.*, 2008 U.S. Dist. LEXIS 90228, at *2 (D. Utah, Nov. 4, 2008); *see also Dexas Int'l, Ltd. v. Office Max, Inc.*, 2009 U.S. Dist. LEXIS 6642, at *19-20 (E.D. Tex., Jan. 30, 2009); *HR US LLC v. Mizco*

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

*Int'l, Inc.*, 2009 U.S. Dist. LEXIS 27056, *28 (E.D. N.Y., Mar. 31, 2009) ("it is appropriate to 'rely upon the illustrations set out in [the patent], as they better represent the claimed design"); *Mondo Polymers Techs., Inc. v. Monroeville Indus. Moldings*, 2009 U.S. Dist. LEXIS 9948, *4 (S.D. Ohio, Jan. 30, 2009) ("The patent's figures adequately and best represent the claimed design and any attempt by the Court to present a verbal description would likely hurt rather than help the understanding of the claim by the parties and a jury"); *Manual of Patent Examining Procedure* § 1503.01 (8th ed. 2006) ("[A]s a rule the illustration in the drawing views is its own best description"). Accordingly, the proper construction for the '789 patent is "the ornamental design for eyeglasses, as shown in Figures 1-7 of the patent." Those figures are depicted below:



See Norris Decl., ¶ 4, Ex. B.

According to the Federal Circuit, "[w]hile it may be unwise to attempt a full description of the claimed design, a court may find it helpful to point out …various features of the claimed design as they relate to the accused design." *Egyptian Goddess*, 543 F.3d at 680; *see also Wilson Sporting*

1  *Good Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322 (Fed. Cir. 2006) ("The rule, however, does not
2  forbid awareness of the accused product or process to supply the parameters and scope of the
3  infringement analysis, including its claim construction component").  The below claim chart
4  highlights the noteworthy features of the '789 patent and the accused products:

| U.S. Patent No. D434,789 | IdeaVillage HD Wraparounds Night Vision Sunglasses |
|---|---|
| FIG. 1 | |
| FIG. 3 | |
| FIG. 4 | |
| FIG. 5 | |

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802



### B. The '789 Patent is Non-Functional

Functional features may limit the scope of a design patent. An aspect of a design is functional if "it is *essential* to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 851 (1982) (emphasis added); *Amini Innovation Corp. v. Anthony California, Inc.* 439 F.3d 1365, 1371 (Fed. Cir. 2006). "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *PHG Techs., LLC v. St. John Cos.*, 46 F.3d 1361, 1367 (Fed. Cir. 2006); *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001) ("Many different configurations of those features (oval, triangular, etc.) could perform the same functions of an integrated door and frame"). Stated differently, "if other designs could produce the same or similar functional capabilities," the design is ornamental, not functional. *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378-79 (Fed. Cir. 2002), *rev'd on other grounds*.

The five factors to be considered in determining whether a patented design is functional are whether (1) the protected design represents the best design; (2) alternative designs would adversely

5

1  affect the utility of the specified article; (3) there are any concomitant utility patents; (4) advertising
2  touts particular features or the design as having specific utility; and (5) there are any elements in the
3  design or an overall appearance clearly not dictated by function. *PHG Techs.*, 46 F.3d at 1366-67.

- **Is the protected design the best design?**

The protected design is one of a vast number of designs on sunglasses worn over prescription glasses. While the product embodying the '789 patent is a commercial success, it is by no means the only alternative for this market segment.

- **Would alternative designs adversely affect the utility of the sunglasses?**

IdeaVillage thought enough of Dioptics's designs to directly copy them after seeing them advertised on the QVC television program. Norris Decl, ¶ 5, Ex. C. But the '789 patent is one of dozens of Dioptics design patents on fit-over sunglasses. All of these designs are functionally the same—they block the sun without requiring the wearer to remove his prescription eyewear. The utility is the same regardless of which design is selected—the difference is aesthetic, not functional.

- **Are there applicable utility patents?**

No utility patents cover the product depicted in the '789 patent.

- **Does advertising tout the utility of the '789 patent?**

Certainly, Dioptics's advertisements for the '789 patent tout the product's fit-over functionality. But, as noted above, there are hundreds of ways to achieve that functionality. None of the other features—lens shapes and sizes, brow bars, etc.—are identified as having any functional components. And IdeaVillage's advertising for the accused product proves the point: it touts not the fit-over functionality but instead the copycat product's lenses, clarity, and "Modern European Style":

///
///
///
///
///
///
///

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802



*See* Norris Decl., ¶ 6, Ex. D.

- **Are there elements that are clearly non-functional?**

The answer to this question, clearly, is yes. There are numerous alternative, yet competitive, designs that fit over prescription eyewear; nothing about the particular shapes and contours are dictated by functional considerations. Each party to this lawsuit has its own portfolio of design patents, all of which share fit-over functionality. But no one would confuse the Dioptics '789 patent with the Live Eyewear '814 patent. There are alternate designs for fit-over sunglasses that both include and exclude side panel lenses, brow and cheek protection, and involve radically different lens shapes and sizes:

///

///

///



| | |
|---|---|
| U.S. Pat. No. D492,341 (Banker, Callahan, Crim) | U.S. Pat. No. D335,133 (Langley) |
| www.opsales.com/layout2.php?prod=sp | U.S. Pat. No. D484,527 (Banker) |
| www.photonicsolutions.co.uk/ datasheets/noir/Lasershield.pdf | U.S. Pat. No. D533,580 (Lane) |

See Norris Decl., ¶¶ 9-14, Exs. F-K.  Yet they all perform the same functions—blocking the sun while fitting over prescription eyewear.  "[I]f other designs could produce the same or similar functional capabilities, the design of the article in question is likely ornamental, not functional." *Rosco*, 304 F.3d at 1378-79.  The patented design should thus be considered as a whole, and no portion of it should be disregarded as functional, when comparing to the accused products.

**C.    IdeaVillage Did Not Provide Any Claim Construction Analysis**

On May 26, 2009, Dioptics served all parties with their Preliminary Claim Construction pursuant to Patent Local Rule 4-2.  Norris Decl., ¶ 2, Ex. A.  IdeaVillage neglected the requirements of Rule 4-2 and did not provide either party a preliminary construction.  *Id.* at ¶ 3.  As such, IdeaVillage has waived any opportunity to advance a contrary claim construction.  *See Rambus Inc. v. Hynix Semiconductor, Inc.*, 569 F. Supp. 2d 946, 980-981 (N.D. Cal. 2008) (White, J.) ("The [local patent] rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed"), citing *Nova Measuring*



Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

1   *Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006) (Zimmerman,

2   Mag. J.); *see also Acco Brands, Inc. v. PC Guardian Anti-Theft Prods.*, 2007 U.S. Dist. LEXIS

3   92052 (N.D. Cal., Dec. 5, 2007) (Illston, J.) (limiting terms to be construed because defendants did

4   not submit the terms at first and only raised them in their briefs).

5         Further, on June 23, 2009, both Dioptics and Live Eyewear filed their Joint Claim

6   Construction Statement in accordance with Patent Local Rule 4-3. *Id*. at ¶ 7, Ex. E. Again,

7   IdeaVillage failed to propose its own claim construction, and acknowledged as much in the filing,

8   and asserted that "The patented designs should be construed according to the principles of law set

9   forth in *Egyptian Goddess v. Swisa*." *Id*. at ¶¶ 7-8, Ex. E.

10        IdeaVillage's failure to serve either a preliminary claim construction or submit its own

11  proposed claim construction as part of the Joint Claim Construction Statement precludes it from now

12  attempting to assert its own, independent construction. Indeed, the purpose of the Patent Local

13  Rules are to "crystallize" the party's theories of the case early in the litigation and ensure those

14  theories are adhered to. *Rambus*, 569 F. Supp. 2d at 980-981 ("The [local patent] rules are designed

15  to require parties to crystallize their theories of the case early in the litigation and to adhere to those

16  theories once they have been disclosed"), *citations omitted*; *see also Acco*, 2007 U.S. Dist. LEXIS

17  92052 (limiting terms to be construed because defendants did not submit the terms at first and only

18  raised them in their briefs).

19        Furthermore, IdeaVillage has the burden of production as to any prior art that may alter the

20  scope of the claims. *See Egyptian Goddess*, 543 F.3d at 679. IdeaVillage has not articulated a single

21  piece of prior art impacting claim scope. Accordingly, the Court should adopt Dioptics's proposed

22  construction without considering any proposals advanced by IdeaVillage. *See Funai Elec. Co., Ltd.*

23  *v. Daewoo Elecs. Corp.*, 593 F. Supp. 2d 1088, 1102 (N.D. Cal. 2009) (Spero, J.) ("that argument is

24  waived by Daewoo's failure to include this theory in its invalidity contentions, as required under the

25  Patent Local Rules"); *Acco Brands*, 2007 U.S. Dist. LEXIS 92052, at *7 ("The Court has already

26  held that claim construction would be limited…due to 'defendants' failure to respect the Patent

27  Local Rule deadlines'").

28  ///

9
DIOPTICS'S OPENING CLAIM CONSTRUCTION BRIEF PURSUANT TO SCHEDULING ORDER
CASE NO. CV 08-03538 (PVT)
SF:259236.2

## IV. CONCLUSION

Dioptics's proposed claim construction, as depicted in its Preliminary Infringement Contentions, should be adopted.

Dated: August 18, 2009

Respectfully submitted,

WINSTON & STRAWN LLP

By: /s/ Nicole M. Norris
Andrew P. Bridges
David S. Bloch
Nicole M. Norris
Attorneys for Plaintiff and
Counterdefendant DIOPTICS MEDICAL
PRODUCTS, INC.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

10
DIOPTICS'S OPENING CLAIM CONSTRUCTION BRIEF PURSUANT TO SCHEDULING ORDER
CASE NO. CV 08-03538 (PVT)
SF:259236.2