UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIOPTICS MEDICAL PRODUCTS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> IDEAVILLAGE PRODUCTS CORP., dba HD VISION, <br><br> Defendant. | Case No.: CV 08-03538 PVT <br><br> **ORDER DENYING DEFENDANT IDEAVILLIAGE'S MOTION TO DISMISS** |

Currently pending before the court is Motion to Dismiss brought by Defendant Ideavillage Products Corp. ("Ideavilliage"). Based on the briefs and arguments presented,

IT IS HEREBY ORDERED that Ideavillage's motion is DENIED. Ideavillage has not shown that Plaintiffs' infringement claims are facially implausible. Nor has it shown that Plaintiffs' unfair competition and Lanham Act claims are either insufficient or preempted by patent law.

### I.  LEGAL STANDARDS

#### A.  MOTIONS TO DISMISS UNDER RULE 12(b)(6)

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint.  Dismissal is warranted where the complaint lacks a cognizable legal

theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law").

A complaint may also be dismissed where it presents a cognizable legal theory, but fails to plead facts essential to the statement of a claim under that theory. *Robertson*, 749 F.2d at 534. The Supreme Court has held that, while a complaint does not need detailed factual allegations:

> "[a] plaintiff's obligation to provide 'grounds' of his 'entitle(ment) to relief' requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ."

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

On a Rule 12(b)(6) motion, all facts are assumed to be true and construed in the light most favorable to the nonmoving party. *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003).

**B.   INFRINGEMENT OF DESIGN PATENTS**

Two years ago the Federal Circuit abandoned the 'point of novelty' test for claims of design patent infringement, and instead held that the "ordinary observer" test should be the sole test for determining whether a design patent has been infringed. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc).

The ordinary observer test was first articulated by the Supreme Court in 1871, when it held that:

> "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *See Gorham Mfg. Co. v. White*, 14 Wall. 511, 81 U.S. 511, 528 (1871).

Under the later developed "point of novelty" test, no matter how similar two items looked, "the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art." *See, e.g., Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984) (citations omitted). The points of novelty for the patented design were determined by comparing the patented design to the prior art designs.

In *Egyptian Goddess*, the Federal Circuit held that allowing the point of novelty test to remain as a second and free-standing requirement for proof of design patent infringement: 1) would be inconsistent with the "ordinary observer" test laid down in *Gorham*; 2) was not required by the Supreme Court case, *Smith v. Whitman Saddle Co.*, 148 U.S. 674 (1893); and 3) was not needed to protect against unduly broad assertions of design patent rights. *See Egyptian Goddess*, 543 F.3d at 672.

The Federal Circuit also refined the ordinary observer test to deem that the ordinary observer would "view the differences between the patented design and the accused product in the context of the prior art." *See Egyptian Goddess*, 543 F.3d at 676. The Federal Circuit explained:

> "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id*.

The ordinary observer test requires consideration of the design as a whole. *See Egyptian Goddess*, 543 F.3d at 675. *All* of the ornamental features illustrated in the figures must be considered. *See International Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1241 (Fed. Cir. 2009). Which features would be significant to the ordinary observer is a question of fact. *Id*. at 1241-42 (finding that whether or not consumers considered the insoles of shoes to be significant was question of fact which needed to be supported by evidence).

C.   **PATENT PREEMPTION**

Federal patent law limits states' ability to regulate unfair competition. State law is preempted when it enters 'a field of regulation which the patent laws have reserved to Congress.' *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 167 (1989). Where state law offers "patent-like protection for ideas deemed unprotected under the present federal scheme," the state law "'conflicts with the strong federal policy favoring free competition in ideas which do not merit patent protection.'" *Id*. At 168 (citation omitted).

Not all causes of action that involve copying another person's invention are pre-empted. Where the cause of action includes an "extra element" such as "palming off" one's product as those

of a competitor, preemption does not apply. *See, e.g., Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc.*, 7 F.3d 1434, 1441-42 (9th Cir. 1993). As the Ninth Circuit explained:

> "Preemption analysis involves determining whether the state law claim contains an element not shared by the federal law; an element which changes the nature of the action 'so that it is qualitatively different from a copyright (or patent) infringement claim.' * * * * 'Thus, preemption law ... requires analysis of each theory (of unfair competition) to determine whether it contains the necessary qualitatively different extra element distinguishing it from copyright (or patent) protection.'" *Summit Mach. Tool Mfg. Corp.*, 7 F.3d at 1439-40 (internal citations omitted).

## II.   DISCUSSION

### A.   PLAINTIFFS INFRINGEMENT ALLEGATIONS ARE SUFFICIENTLY PLAUSIBLE TO WITHSTAND A MOTION TO DISMISS

The '789 Patent and the '814 Patent are both design patents for "fit-over" sunglasses – sunglasses that can be worn over regular glasses.[1] Plaintiffs allege that both of the accused products are also fit-over sunglasses. Plaintiffs attached to the complaint copies of both patents, and pictures of both accused products, presumably to illustrate the similarity between the patents and the accused products.

In the present motion, Defendant Ideavillage argues that, based on the patents, the prior art cited in the patent, and the images of the accused products attached to the complaint, dismissal is warranted because the infringement claims are "implausible." Ideavillage points to various differences between the patents and the accused products, and to certain similarities between the accused product and the prior art, to support its contention. Ideavillage urges the court to find that those comparisons render any potential for finding infringement "implausible."

Plaintiffs argue that Ideavillage is using the wrong standard by focusing on minute alleged differences rather than the similarity of the whole. The court agrees.

The following visual comparison from Plaintiffs' opposition brief shows a general similarity between the patents and the accused products:

---

[1]   As used herein, the term '789 Patent refers to U.S. Design Patent No. D434,789, and the term '814 Patent refers to U.S. Design Patent No. D532,814.



The differences pointed out by Ideavillage are relatively minor, and in some cases are not necessarily reliable due to the different positions depicted for the patented design and the accused product. For example, in the following comparison from Ideavillage's moving brief, the patented design is shown in a direct side view, while the accused product is shown in an angled side view (in which both ear segments are visible):



1    Ideavillage's attempt to show that its accused products are "more similar" to the prior art than
2    to the patented designs suffers from at least one major deficiency in that it has not presented all
3    views of the prior art, and thus it has based its argument on an incomplete comparison.  For example,
4    with regard to the Stables '083 prior art, consideration of the front view shows a potentially
5    significant difference between the prior art and both the accused product and the patent-in-suit:

**PRIOR ART:**



FIG. 1

**ACCUSED PRODUCT:**



**'789 PATENT:**



FIG. 3

The front views show that neither the accused product nor the patent-in-suit have the kind of
prominent bowed top that is seen in the prior art.  In this particular regard the accused product is
clearly more similar to the patented design.  Because an ordinary observer might find the front view
of fit-over sunglasses to be a primary consideration, there is a genuine issue of material fact that

would preclude summary judgment, much less outright dismissal.

There is also an issue regarding what kind of prior art can be used for the ordinary observer comparison for fit-over sunglasses. Ideavillage has referenced many items of prior art that involve regular sunglasses rather than fit-over sunglasses. Neither party has briefed this issue, and because the court finds dismissal unwarranted in any event, it does not reach this issue.

In sum, Ideavillage has not shown that, as a matter of law, no ordinary observer could find that the designs of the accused products, the "HD Trap" and the "HD Vision Wrap," are substantially the same as the '789 Patent and the '814 Patent, respectively. Thus, dismissal of the infringement claims is not warranted.

**B. PLAINTIFFS HAVE ADEQUATELY ALLEGED THEIR CAUSES OF ACTION FOR LANHAM ACT VIOLATIONS, UNFAIR COMPETITION, AND VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200**

Defendant Ideavillage's argument that the third, fourth and fifth causes of action should be dismissed because Plaintiffs use the term "and/or" is overly simplistic. Not all uses of the term "and/or" render a cause of action impermissibly vague. *See, e.g., DocMagic, Inc. v. Ellie Mae, Inc.*, --- F.Supp.2d ---, 2010 WL 3987495 at *17 (N.D. Cal. Oct. 12, 2010) (finding allegation "reverse engineered, duplicated, modified, and/or otherwise used" was not impermissibly vague under *Twombly*). Where, as here, the allegation is sufficient under either of the "and/or" scenarios, dismissal is unwarranted.

As Plaintiffs point out, allegations that a competitor is using pictures of one's products to advertise their own products is actionable as a Lanham Act violation. *See, Lamothe v. Atlantic Recording Corp.*, 847 F.2d 1403 (9th Cir. 1988) (Lanham Act prohibits "the use of a competitor's advertising material, or a sample or photograph of the competitor's product, to impliedly represent that the product being sold is made by the competitor"). Thus, dismissal is not warranted based on the allegation that Ideavillage used Live Eyewear's "Vistana" product in its advertising.

Nor is dismissal warranted under alternative allegation, that Ideavillage used in its advertising "a product substantially similar to Live Eyewear's 'Vistana' product," because advertising such a product, when it is not the product being sold, can also constitute unfair competition and a Lanham Act violation. *See, e.g., Ebeling & Reuss Co. v. International Collectors*

ORDER, *page 7*

*Guild, Ltd.*, 462 F. Supp. 716, 720 (E.D. Pa. 1978) (finding evidence established unfair competition under Lanham Act where defendant depicted in its advertisements a product that was apparently the same, if not identical, in appearance to plaintiff's product, and product sold by defendant was inferior to plaintiff's product).

Because Plaintiffs adequately allege a Lanham Act violation, Ideavillage argument regarding California Business & Professions Code Section 17200 for lack of sufficient Lanham Act claim fails as well.

### C. PATENT LAW DOES NOT PREEMPT ANY OF PLAINTIFFS' CLAIMS

Patent law does not preempt any of Plaintiffs' claims because the claims involve qualitatively different "extra elements" that distinguish them from patent protection. Plaintiffs have not merely alleged that Ideavillage has copied their patented designs. They also allege, for example, that Ideavillage is using depictions of fit-over sunglasses in its advertising that are either photos of Plaintiffs' product, or products substantially similar to Plaintiffs' products, and then substituting its own allegedly inferior product. This is precisely the kind of extra element that precludes dismissal based on patent preemption.

### III. CONCLUSION

Plaintiffs complaint adequately alleges patent infringement, common law unfair competition, Lanham Act violations and unfair competition under Section 17200. Thus, dismissal is not warranted.

Dated: *10/29/10*

PATRICIA V. TRUMBULL
United States Magistrate Judge